*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0135p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 03-6311

JACKIE MCCRAVEN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20295—Bernice B. Donald, District Judge.

Argued: December 17, 2004

Decided and Filed: March 17, 2005

Before: NELSON and COLE, Circuit Judges; SARGUS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Edwin A. Perry, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. David C. Henry, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. David C. Henry, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

DAVID A. NELSON, Circuit Judge. This is a direct criminal appeal in which the defendant challenges a denial of his motion to suppress evidence. The case presents a close question as to whether a search warrant should have issued on the strength of an affidavit stating that a confidential informant, who was said to have given police reliable information in the past, witnessed recent drug sales at the defendant's residence. We conclude that the officers who relied on the warrant did so reasonably, even if the affidavit was in fact insufficient. We find no reversible error, moreover, in the district court's conclusion that a reasonable time elapsed between the officers' knocking and announcing their presence and the officers' forcible entry into the defendant's house.

_____

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

1

After the briefing of this appeal was completed, the defendant raised a Sixth Amendment challenge to his sentence under *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). Applying *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005), which extended *Blakely*'s reasoning to the United States Sentencing Guidelines, we conclude that there was no Sixth Amendment violation in the circumstances presented here. *Booker* having invalidated the statutory provisions that make the guidelines mandatory, however, we shall remand the case for resentencing under the advisory guidelines schema that now obtains.

I

On October 13, 2001, Detectives Raquel Jefferson and Renwick Cowans of the Memphis Police Department executed an affidavit in support of an application for a warrant to search the residence of the defendant, Jackie McCraven. The affidavit stated that the detectives believed cocaine, marijuana, drug records, and drug proceeds could be found on the premises. As the basis for this belief, the affidavit said that

> "affiant has talked with a reliable informant of Memphis, Shelby County, Tennessee who has given the affiant other information in the past, which has found [sic] to be true and correct. This reliable informant stated that within the past five days of October 12, 2001 this reliable informant has been inside of [Mr. McCraven's house] and observed the m/b Jackie McCraven storing and selling cocaine and marijuana inside the residence. This occurred in Memphis, Shelby County, Tennessee."

A search warrant was issued on the same day by a judge of the Shelby County criminal court.

A team of officers executed the search warrant on October 15, 2001, at approximately 4:30 to 5:00 p.m. According to two of the officers, Detectives Jefferson and Cowans, they loudly knocked and announced their presence, waited 10 to 12 seconds, and then, when there was no response, forcibly entered Mr. McCraven's house. (Another member of the team confirmed that Detective Cowans loudly knocked and announced the officers' presence with an "elevated" voice;" this witness too estimated the time between the initial knock and the forcible entry as 10 to 12 seconds.) The officers encountered McCraven inside the house, conducted a search, and recovered powder cocaine, crack cocaine, marijuana, and a handgun.

Mr. McCraven was indicted on federal drug and firearm charges. He moved to suppress all evidence discovered in the search of his house, arguing that the detectives' affidavit did not support a finding of probable cause and that the police failed to knock and announce their presence before entering.

The district court conducted an evidentiary hearing at which the officers testified to the facts set forth above. Mr. McCraven testified that he was watching television in an upstairs bedroom when the police arrived, and he said that until the police broke open his door he had not heard anything other than his dog barking. A neighbor, who had been standing at the end of a driveway two houses away, testified that she heard officers yelling "police" before entering the house, but that she did not remember whether the officers knocked on the door. This witness estimated that about six or seven seconds elapsed between the arrival of the officers at the door and their entry into the house.

The district court denied the motion to suppress. As to the issuance of the search warrant, the court concluded that the issuing magistrate had been presented with sufficient information to find probable cause. On the knock-and-announce issue, the district court found that the witnesses' testimony could be reconciled and that the "officers knocked and announced their appearance and purpose in compliance with the Fourth Amendment requirements." The court went on to hold that

"[u]nder the totality of the circumstances, waiting only a matter of seconds [before entry] was reasonable."

Mr. McCraven pleaded guilty to the drug and firearm charges without waiving his right to appeal the denial of his suppression motion. A probation officer then prepared a presentence investigation report advising that the guideline sentence range, as calculated by the probation officer, was a term of imprisonment in the range of 84-105 months. The calculation included a two-level enhancement of McCraven's base offense level because of his admitted possession of a firearm. See U.S.S.G. § 2D1.1(b)(1).

Both the government and the defendant indicated that they had no objections to the report, and the district court accepted the probation officer's conclusion that the minimum sentence within the guideline range would be 84 months. The court granted a defense motion for a downward departure, however, and imposed a sentence of 72 months. After the entry of final judgment, Mr. McCraven filed this timely appeal.

While the appeal was pending, and after the completion of regular briefing, Mr. McCraven filed a letter pursuant to Rule 28(j), Fed. R. App. P., citing as supplemental authority *Blakely v. Washington*, 124 S.Ct. 2531 (2004). The relevance of *Blakely*, the letter suggested, was that "without submission to the jury" the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) "violates the Sixth Constitutional Amendment . . . ." The government filed no response.

## II

In an appeal from the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo. See *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003).

## A

The first question before us is whether the Shelby County judge who issued the warrant to search Mr. McCraven's house "had a substantial basis for finding that the affidavit established probable cause. . . ." *Johnson, id.* (internal quotation marks omitted). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Id.* (internal quotation marks omitted). The "substantial basis" standard accords great deference to the issuing judge's determination that an affidavit establishes probable cause. See *id.*

In *United States v. Allen*, 211 F.3d 970 (6th Cir.), *cert. denied*, 531 U.S. 907 (2000), our court, sitting en banc, considered the circumstances in which an affidavit based on information received from a confidential source provides a "substantial basis" for a finding of probable cause. Following *Illinois v. Gates*, 462 U.S. 213 (1983), we eschewed adoption of a rigid test in favor of a "totality of the circumstances" approach. See *Allen*, 211 F.3d at 972-76. Under *Allen*, while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form. See *id.* at 975-76. The affidavit could state that police corroborated significant parts of the informant's story. Or the affiant could attest "with some detail" that the informant provided reliable information in the past. *Id.* at 976. Or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name. As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.

The affidavit in *Allen* stated (1) that the affiant had known the informant for five years, during which time the informant provided reliable information about criminal activity, (2) that the

informant's name had been disclosed to the issuing judge, and (3) that the informant had personally observed cocaine in the suspect's apartment within the previous 72 hours. See *id.* at 971-72. The en banc court concluded that this was sufficient to support the issuance of a search warrant. See *id.* at 976.

As compared to the affidavit in *Allen*, the affidavit before us here states fewer facts from which the issuing judge could independently determine the informant to be reliable. There are no averments about the length of the relationship between the detectives and the informant, there are no averments about the nature of the information provided by the informant in the past, and there is no suggestion that the detectives named the informant to the issuing judge. But the facts of *Allen* do not define the minimum requirements for an affidavit based on an informant's tip. We know this because the *Allen* court relied in part on *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986), *cert. denied*, 479 U.S. 1092 (1987), which upheld the sufficiency of an affidavit stating only that a named informant – whose reliability was not attested to by the affiant – had seen the defendant sell marijuana inside his residence within the previous 24 hours. *Allen*, 211 F.3d at 973.

*Allen* and *Pelham* make it clear that independent corroboration of an informant's story is not necessary to a determination of probable cause. *Pelham* demonstrates, in addition, that an affidavit can pass muster without stating both that the informant gave his or her name and that the informant provided reliable information in the past.

All of this suggests that the affidavit in the case at bar – which, to repeat, stated that an informant who had previously given reliable information saw Mr. McCraven selling cocaine and marijuana inside his house – may have been sufficient to support a finding of probable cause. The main difference between the affidavit of Detectives Jefferson and Cowans and the affidavit in *Pelham* is that the one in *Pelham* named the informant instead of stating that the informant had given reliable information in the past. An informant's willingness to be named is not necessarily a better predictor of reliability, in our view, than an informant's having a track record of providing reliable information.

On the other hand, the averments in the Jefferson-Cowans affidavit regarding the informant's track record may have been too general to support the issuance of a warrant absent additional indicia of reliability. *Allen*, it will be recalled, contemplates attestation "with some detail" that the informant provided reliable information in previous investigations. *Allen*, 211 F.3d at 976. The detectives' attestation in this case is not particularly detailed, although the reader can reasonably presume that the "information" provided by the informant in the past did not consist of tips on the stock market. See *id.* at 975 ("It is obvious on the face of the affidavit that such information [provided by an informant] in the past most likely concerned narcotics").

In sum, we think the sufficiency of the present affidavit is a close question. We need not resolve the question, however, because, as we conclude, the denial of the motion to suppress was proper under the good-faith rule of *United States v. Leon*, 468 U.S. 897 (1984), even if the affidavit be deemed insufficient.

In *Leon*, the Supreme Court held that the exclusionary rule should not bar "admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Leon*, 468 U.S. at 905. The relevant question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23, *quoted in United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000), *cert. denied*, 531 U.S. 1095 (2001). In the light of *Allen* and *Pelham*, it seems obvious that the law-enforcement version of the hypothetical "reasonable person" — *i.e.* "a reasonably well trained officer" — would not necessarily have known that the affidavit supporting the warrant at issue here was insufficient,

if in fact it was insufficient. Accordingly, we cannot say that Detectives Jefferson and Cowans acted unreasonably.

B

The second question raised by Mr. McCraven relates to the manner in which the officers executed the search warrant. "Absent exigent circumstances, the Fourth Amendment requires the police to knock and announce their presence before forcibly entering a location to execute a search warrant." *United States v. Pelayo-Landero*, 285 F.3d 491, 498 (6th Cir. 2002). Officers must wait "a reasonable period of time" between the announcement and the forcible entry. *Id.* (internal quotation marks omitted). "What is reasonable depends and may vary based upon the particular circumstances of the situation in question." *Id.*

In *United States v. Banks*, 540 U.S. 31 (2003), another case involving distribution of cocaine, the Supreme Court held that it was reasonable for police to enter the defendant's apartment 15 to 20 seconds after knocking and announcing their presence. The Court relied on the fact that cocaine, "which a prudent dealer will keep near a commode or kitchen sink," is "easily disposable." *Banks*, 540 U.S. at 38-40. Pointing out that police executed the search warrant during the day, "when anyone inside would probably have been up and around," and that 15 to 20 seconds is sufficient time "for getting to the bathroom or the kitchen to start flushing cocaine down the drain," the Court concluded that the danger of loss of evidence justified police in entering the premises without further delay. *Id.* at 40.

In the case at bar, as in *Banks*, the search warrant was executed during the day and an object of the search was cocaine. Mr. McCraven emphasizes that 10 to 12 seconds is a shorter time than the 15 to 20 seconds approved in *Banks*. But in *United States v. Pennington*, 328 F.3d 215, 221 (6th Cir. 2003), *cert. denied*, 540 U.S. 1112 (2004), this court held that "eight to ten seconds was a reasonable period of time" for officers to wait before forcibly entering a house to execute a search warrant. That case also involved a daytime search for drugs. See *Pennington*, 328 F.3d at 221. It differs from the case at bar in that there was evidence in *Pennington* that an occupant of the house ran away from the front door after the police knocked, but that difference does not in our view render *Pennington* entirely uninstructive. Other courts have found periods shorter than 15 to 20 seconds to be reasonable in situations similar to that presented here. See *United States v. Jones*, 208 F.3d 603, 610 (7th Cir. 2000) (five to 13 seconds was reasonable where drugs were sought and the suspect was believed to be armed); *United States v. Garcia*, 983 F.2d 1160, 1168 (1st Cir. 1993) (10 to 15 seconds was reasonable where easily disposable drugs were sought).

In the light of *Banks* and other cases, we are not persuaded that it was unreasonable for the officers to enter Mr. McCraven's house 10 to 12 seconds (or even a somewhat shorter time) after announcing their presence. A reasonable officer could believe, it seems to us, that a longer time might have allowed McCraven to dispose of the drugs in his possession.

Mr. McCraven argues that the district court violated Rule 12(e), now Rule 12(d), Fed. R. Crim. P., which requires courts to state their "essential" factual findings on the record when ruling on a motion. The thrust of this argument is that the court failed to make an election between the detectives' estimate of the elapsed time (10 to 12 seconds) and the neighbor's estimate of the time (6 or 7 seconds).

The district court found that all of the testimony was "credible and reconcilable." We take this to mean that the court accepted the various time estimates as honest approximations and found them close enough to one another that there was no substantial factual dispute. In these circumstances, we do not think it was necessary for the court to find that a particular number of

seconds elapsed. The court's "essential" finding, in our view, was that "waiting only a matter of seconds" – whether six, 12, or somewhere in between – "was reasonable."

### III

After the briefing of this case was completed, Mr. McCraven, as noted above, submitted a letter under Rule 28(j), Fed. R. App. P., citing *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). In his Rule 28(j) letter, Mr. McCraven suggested for the first time that the district court violated his Sixth Amendment jury trial right by enhancing his sentence under U.S.S.G. § 2D1.1(b)(1).

*Blakely*, a case involving the state of Washington's determinate sentencing scheme, has now been made applicable to the federal sentencing guidelines. See *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005). The Supreme Court held in *Booker* that the Sixth Amendment forbids judicial determination of "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum" sentence – *i.e.*, the upper extreme of the guidelines sentence range – "authorized by the facts established by a plea of guilty or a jury verdict . . . ." *Booker*, 125 S. Ct. at 756.

Mr. McCraven's sentence does not violate the Sixth Amendment as construed in *Booker*. The § 2D1.1(b)(1) enhancement was based on Mr. McCraven's possession of a dangerous weapon, and the fact that he possessed such a weapon was established by McCraven's plea of guilty to the firearm charge. Contrary to the suggestion in his Rule 28(j) letter, Mr. McCraven was not entitled to have a jury second-guess his guilty plea.

Because the remedy ordered by the Court in *Booker* had the effect of altering the Sentencing Reform Act to make the guidelines advisory rather than mandatory, however, we believe that it would be prudent to accord the district court an opportunity to take another look at the sentence in light of the new dispensation. See *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005).[1]

On remand, the district court should give due consideration to the guidelines — bearing in mind that U.S.S.G. § 2D1.1(b) calls for an enhancement of the guidelines offense level, as the court has already correctly determined — but the court should treat the guidelines as advisory rather than mandatory. The advice provided by the guidelines remains important, of course, as do the statutory factors that still have to be considered under 18 U.S.C. § 3553(a).

Mr. McCraven's conviction is **AFFIRMED**, his sentence is **VACATED**, and the case is **REMANDED** for resentencing.

---

[1]There may be some degree of tension between the opinion in *Barnett* and the opinion published earlier in *United States v. Bruce*, 396 F.3d 697 (6th Cir. 2005). In *Bruce*, however, the defendant was sentenced at the very top of the guideline range, while the defendant in *Barnett* was sentenced at the middle of the range. (In this respect *Barnett* resembles *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005), an opinion which, as has widely been noted, was published one day before the opinion in *Bruce*. It may well be that *Oliver* and *Bruce* are in conflict, but, unlike this case, both of them involved a Sixth Amendment violation.) In the case at bar Mr. McCraven received a sentence 12 months *below* the guideline range — and while it may be almost as unlikely here as in *Bruce* that the district court would have given Mr. McCraven a different sentence had the court understood that the guidelines are not mandatory, only the district court can say for sure whether this is so.